UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| JEREMY GREENBAUM, and CHRISTINA MORTON, on behalf of themselves and all those similarly situated, | ) ) ) ) ) | |
|---|---|---|
| Plaintiffs, | ) ) ) | No. 3:21-cv-00030 |
| v. | ) ) | |
| CLARKSVILLE HEALTH SYSTEM, G.P., PROFESSIONAL ACCOUNT SERVICES, INC., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs Jeremy Greenbaum and Christina Morton, individually and on behalf of a putative class, originally brought this action in state court against Defendants Clarksville Health Systems, G.P. ("Clarksville Health") and Professional Account Services, Inc. ("PASI") for allegedly engaging in "unlawful, unfair, and predatory hospital lien and debt collection practices" under Tennessee law.[1] (Doc. No. 1-3 ¶ 1). Defendants then filed a Notice of Removal (Doc. No. 1) asserting that this case implicates a substantial question of federal law under the Medicare Act. Now before the Court is Plaintiffs' Motion to Remand (Doc. No. 20), to which Defendants filed a response in opposition (Doc. No. 23), and Plaintiffs replied (Doc. No. 24). For the following reasons, Plaintiffs' Motion to Remand will be granted.

---

[1] The parties dismissed former defendant Knoxville HMA Holdings, LLC from this case by agreement under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Doc. Nos. 27, 28).

## I. BACKGROUND

Clarksville Health has contracts with health insurance providers like Medicare, the Veteran's Administration ("VA"), and Amerigroup Community Care ("Amerigroup") to treat insured patients at reduced rates. (Doc. No. 1-3 ¶¶ 3, 25, 33). But according to the operative Complaint, when Clarksville Health determines that a third party may be liable for a patient's injuries (i.e. if another party was involved in an automobile accident) it "will refuse to submit that patient's discounted medical bills to the patient's health insurance provider even when [Clarksville Health] knows the patient has valid health insurance at the time treatment is rendered." (Id. ¶ 3). Instead, Clarksville Health enlists PASI (a debt collection corporation) to file non-possessory hospital liens[2] against the debt for amounts that "far exceed the negotiated reimbursement rates [Clarksville Health] would receive if the patient's medical bills were submitted to his or her health insurance provider[.]" (Doc. No. 1-3 ¶ 4). This business practice "result[s] in such patients paying more for treatment than they are contractually required to pay." (Id.). The Complaint further alleges that Clarksville Health "employs this business model under the belief that it if 'holds out' on submitting the medical bills to the patient's health insurance provider, [Clarksville Health] will ultimately receive a higher reimbursement rate . . . when the patient attempts to recover from the third party and/or its insurance provider." (Id. ¶ 5).

In October 2019, Greenbaum received emergency medical services at the Tennova Healthcare – Clarksville hospital ("Hospital") for injuries he sustained in an automobile accident,

---

[2] According to the Complaint, "[a] lien is a legal claim or charge on property used as security for the payment of a debt." (Doc. No. 1-3 ¶ 16). While true, this definition overlooks that liens are a product of common law and statute, and liens are more properly viewed as a procedural device that gives notice to the world that the lienholder believes it may have a valid debt against another. See Oliver v. Upton, No. 01A01-9705-CH-00197, 1998 WL 151388, at *5 (Tenn. Ct. App. Ar. 3, 1998); Myers v. U.S. Bank Mort., No. 12-3032-STA-TMP, 2013 WL 12043366, at *1 (W.D. Tenn. Feb. 6, 2013).

2

and he incurred a debt to Clarksville Health (the Hospital's owner) for his treatments. (Id. ¶¶ 1, 14, 21, 26). The same happened to Morton in May 2020. (Id. ¶ 29, 34). At the time of their treatments, both Plaintiffs provided their valid health insurance information to Clarksville Health. (Id. ¶¶ 22, 30). Greenbaum had health insurance coverage through Medicare and the VA, and Morton had coverage through Medicare and Amerigroup. (Id. ¶¶ 23, 31). But instead of submitting Plaintiffs' medical bills to Plaintiffs' insurance providers at the contractual, discounted rate, Clarksville Health instructed PASI to file hospital liens against those debts for the full, non-discounted amount of treatment. (Id. ¶¶ 26, 34). As a result of these allegedly illegal hospital liens, Plaintiffs filed this action against Defendants in the Chancery Court for Montgomery County, Tennessee, asserting the following state-law causes of action: tortious interference with business relationship (Count I), declaratory judgment that the liens violate the Tennessee Hospitals' Liens Act ("HLA"), Tenn. Code. Ann. § 29-22-101, et seq. (Count II), breach of contract (Count III), request to quash or reduce the liens (Count IV), and violation of the Tennessee Consumer Protection Act ("TCPA") (Count V). (Id. ¶¶ 45–78).

On January 14, 2021, Defendants filed a timely Notice of Removal (Doc. No. 1) stating that this case is removable under 28 U.S.C. § 1441 because it implicates the Medicare Act and therefore arises under federal law within the meaning of 28 U.S.C. § 1331. Defendants also contend that the case may stay in federal court because the Court has supplemental jurisdiction under 28 U.S.C. § 1367. (Id. ¶ 6). In response, Plaintiffs filed a Motion to Remand (Doc. No. 1) arguing that the Medicare Act does not provide grounds for removal in this case.[3]

---

[3] Defendants also filed a Motion for Judgment on the Pleadings (Doc. No. 13), but the Court must resolve the motion to remand first. See H.R. ex rel. Reuter v. Medtronic, Inc., 996 F. Supp. 2d 671, 675 (S.D. Ohio 2014) (citation omitted) (noting that a "motion to remand must be resolved before the motion to dismiss").

**II.    LEGAL STANDARD**

Because federal district courts only have original jurisdiction over civil actions "*arising under* the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331 (emphasis added), defendants sued in state court generally may remove the case to federal district court under 28 U.S.C. § 1441(a) if the case arises under federal law.[4] See Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 324–25 (6th Cir. 2007). On the other hand, "[i]f the complaint relies only on state law, the district court generally lacks subject matter jurisdiction and the action is not removable." Palkow v. CSX Transp., Inc., 431 F.3d 543, 552 (6th Cir. 2005).

To determine whether a claim arises under federal law, courts apply what is commonly referred to as the "well-pleaded complaint rule." This rule provides that federal jurisdiction exists only in those cases in which a well-pleaded complaint (1) states a federal cause of action or (2) includes state-law claims that necessarily depend on a substantial and disputed federal issue.[5] Id. at 550 (quoting Thornton v. SW Detroit Hosp., 895 F.2d 1131, 1133 (6th Cir. 1990)); see also Ohio ex rel. Skaggs v. Brunner, 629 F.3d 527, 530 (6th Cir. 2010). As its name suggests, the well-pleaded complaint rule requires courts to ignore potential defenses and look only to the face of the complaint to determine whether a federal question exists. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Ultimately, "the plaintiff [is] the master of the complaint" and she "may

---

[4] 28 U.S.C. § 1441(b) also provides an avenue for state-court defendants to remove an action to federal court based on diversity of citizenship under 28 U.S.C. § 1332, but that provision is not at issue here because Defendants do not argue that there is diversity jurisdiction in this case.

[5] The Sixth Circuit has sometimes referred to the substantial-federal-question doctrine as an "exception" to the well-pleaded complaint rule. See Mikulski v. Centerior Energy Corp., 501 F.3d 555, 560 (6th Cir. 2007). But this terminology is somewhat of a misnomer, as "[t]he substantial-federal-question doctrine . . . is not a true exception to the rule . . . because it does not permit jurisdiction based on federal issues raised outside the complaint." Dillon, 992 F. Supp. 2d at 761–64; see also Carmine v. Poffenbarger, 154 F. Supp. 3d 309, 315 (E.D. Va. 2015).

4

simply avoid federal jurisdiction by relying exclusively on state law." Gentek, 491 F.3d at 325 (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 398–99 (1987)).

"Most rules have exceptions, of course, and the well-pleaded complaint rule is no different." Dillon v. Medtronic, Inc., 992 F. Supp. 2d 751, 757 (E.D. Ky. 2014) (Thapar, J.). "It has two: complete preemption and artful pleading." Id. Regarding the first exception, "[i]f Congress intends that a federal statute should 'completely preempt' an area of state law, any complaint alleging claims [within] that area of state law is presumed to allege a claim arising under federal law." Palkow, 431 F.3d at 552 (citing Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 64 (1987)); see also Loftis v. United Parcel Serv., Inc., 342 F.3d 509, 515 (6th Cir. 2003). "The complaint may thus be removed to federal court and will be treated as alleging a federal cause of action, notwithstanding that on its face, the . . . complaint alleges only a state-law cause of action." Id. Under the second exception, the artful-pleading doctrine, "plaintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims." Mikulski, 501 F.3d at 560; see also Brunner, 629 F.3d at 530 (noting that this exception applies if the complaint "artfully pleads state-law claims that amount to federal-law claims in disguise").

The party seeking removal has the burden of demonstrating that the claims arise under federal law, either through the well-pleaded complaint rule or one of its exceptions, and all doubts should be resolved against removal. See Eastman v. Marine Mech. Corp., 438 F.3d 544, 549 (6th Cir. 2006) (citations omitted). And if "a plaintiff believes that removal is improper because the complaint does not arise under federal law, the plaintiff may challenge removal, including by moving to remand the matter to state court." Gentek, 491 F.3d at 325.

### III. ANALYSIS

As explained above, "[a] complaint arises under federal law if it: (1) states a federal cause of action; (2) includes state-law claims that necessarily depend on a substantial and disputed

5

federal issue; (3) raises state-law claims that are completely preempted by federal law; or (4) artfully pleads state-law claims that amount to federal-law claims in disguise." Brunner, 629 F.3d at 530. The first option does not apply here because Defendants admit that "Plaintiffs have not brought federal claims in this case." (Doc. No. 1 ¶ 4). And the fourth option is not at issue because Defendants do not invoke the artful-pleading doctrine.

Instead, Defendants argue that this case should stay in federal court because: (1) the Complaint's allegations necessarily depend on a substantial and disputed federal issue under the Medicare Act; (2) the Medicare Act completely preempts Plaintiffs' claims;[6] and (3) the Court should exercise its supplemental jurisdiction now that the case has been removed. The Court will address each of these arguments below.

 A. <u>Necessarily Raise a Substantial, Disputed Federal Question</u>

The Complaint alleges that Defendants committed two overarching wrongful acts. One is a *substantive* act, namely that Defendants violated Tennessee's HLA by filing hospital liens in excess of negotiated rates. Plaintiffs also allege that Defendants committed a *procedural* violation by asserting a lien on their treatment instead of first billing Medicare. (See Doc. No. 1-3 at ¶¶ 19, 28, 36). Defendants maintain that this second allegation necessarily depends on the resolution of a substantial question of federal law because specific Medicare regulations and the Medicare Secondary Payer Manual ("MSP Manual")[7] provide that "in situations such as these involving a motor-vehicle accident and subsequent medical care," health care providers are required to first pursue recovery from a liability insurer through a hospital lien rather than bill Medicare. (Doc. No.

---

[6] Defendants made their complete preemption argument in their response to Plaintiffs' motion to remand (Doc. No. 23 at 7–8) but not in their Notice of Removal.

[7] Available electronically at:
https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/msp105c02.pdf.

6

23 at 5). Thus, Defendants argue, removal is warranted because if a state court ruled that health care providers must first seek reimbursement through Medicare before asserting hospital liens, it "would substantially disrupt the Medicare system." (Id. at 8).

In "a special and small category of cases," federal-question jurisdiction exists over state-law claims if those claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005) (citations omitted). "That is, federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013).

A lien is a placeholder representing an alleged debt. Whether a lien is valid determines if payment is required. Here, Plaintiffs' challenge to the validity of Defendants' liens relies solely on state law, and the Court does not find that Plaintiffs' state-law claims challenging the validity of Defendants' liens necessarily raise a federal issue because the Complaint does not allege that Defendants' liens violated the Medicare Act or any other federal law. Nor do Plaintiffs' state-law claims necessarily depend on a favorable interpretation of the payment scheme under Medicare rules or regulations. See Dillon, 992 F. Supp. 2d at 756; cf. New York City Health & Hosps. Corp. v. WellCare of NY Inc., 769 F. Supp. 2d 250, 257 (S.D.N.Y. 2011) (finding that plaintiff's state-law claims for breach of contract and unjust enrichment raised a substantial federal question because they involved allegations that defendant violated agreements to comply with federal Medicare law). Instead, all that Plaintiffs have said, and all that they could fairly be construed as saying, is that Defendants violated "Tennessee law" by filing improper hospital liens. (Doc. No.

7

1-3 ¶¶ 49–50, 56, 62–63, 66 75); see also Brunner, 629 F.3d at 531. If Defendants' liens survive Plaintiffs' challenge and are deemed valid under Tennessee law, then the issue of payment or satisfaction of the liens arises and Medicare's payment prerequisites come into play. But for now, based on the allegations in the Complaint, Plaintiffs' state-law claims do not necessarily raise a federal question and are not "affirmatively 'premised' on a violation of federal law." See New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A., 824 F.3d 308, 315 (6th Cir. 2016) (citing Grable, 545 U.S. at 314).

To be sure, Defendants' alleged compliance with the Medicare payment rules and regulations and whether those rules preempt Tennessee's HLA *may* be an affirmative defense to Plaintiffs' state-law claims.[8] But regardless of whether that federal defense is viable, the Supreme Court has made clear that:

> [A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal.

Caterpillar, 482 U.S. at 399. Because Plaintiffs' state-law claims attacking Defendants' liens do not require the Court to resolve any disputed questions under the Medicare Act, the Court does not find that this case falls within the "special and small category of cases" where the substantial federal question doctrine applies. It would therefore be improper for the Court to exercise federal jurisdiction over Plaintiffs' case on that basis. See Dillon, 992 F. Supp. 2d at 756.

---

[8] The Court has serious doubts about whether the Medicare Act conflicts with Tennessee's HLA. See MSP Manual, § 40.2(F) ("The MSP provisions do not create lien rights when those rights do not exist under State law"); Gregg v. Providence St. Joseph Health, No. 4:20-cv-03880-YGR, --- F. Supp. 3d ---, 2021 WL 533756 (N.D. Cal. Feb. 12, 2021) (holding that there was no conflict between the Medicare rules and the California Hospital Lien Act).

8

As a final note, Defendants rely heavily on what they describe as a "nearly identical" case in Spectrum Health Continuing Care Grp. v. Anna Marie Bowling Irrevocable Tr., 336 F. Supp. 2d 697 (W.D. Mich. 2004). (Doc. No. 1 at 2; Doc. No. 23 at 7–9). In Spectrum, the Western District of Michigan exercised subject matter jurisdiction over a case involving the enforceability of a lien because the action arose under federal Medicaid law. 336 F. Supp. 2d at 699, 701. But it is unclear how Spectrum, a case decided on summary judgment that has since been overturned by the Sixth Circuit, is relevant to the issues presented here, particularly given that the plaintiff in that case *never filed a motion to remand*. And even if, as Spectrum suggested, *Medicaid* rules prohibiting "balance billing" preempted state law, (see Doc. No. 23 at 7 (citing 336 F. supp. 2d at 709)), a potential preemption defense does not warrant removal. Caterpillar, 482 U.S. at 399. Accordingly, the Court does not find Spectrum persuasive or even relevant to the instant motion, and Spectrum certainly does not support federal subject matter jurisdiction in this case.

B. Complete Preemption

Defendants alternatively argue that even if the Complaint on its face alleges only state-law causes of actions, those claims still arise under federal law because they are completely preempted by the Medicare Act. (Doc. No. 23 at 7–8). In support of this argument, Defendants contend that "if Plaintiffs established that refusing to bill Medicare in lieu of filing a hospital lien violated the TCPA or other common law, Medicare rules and regulations, which state otherwise, would preempt any such ruling." (Id. at 8).

Defendants' argument reflects a misunderstanding of the critical difference between "ordinary preemption" and "complete preemption." See Warner v. Ford Motor Co., 46 F.3d 531, 535 (6th Cir. 1995) (en banc). Ordinary preemption is an affirmative defense that "applies to statutory sections that arguably supersede conflicting state law *without creating the right of removal*." Roddy v. Grand Trunk Western R.R. Inc., 395 F.3d 318, 323 (6th Cir. 2005) (citing

9

Caterpillar, 482 U.S. at 398) (emphasis added). "The fact that a defendant might ultimately prove [its affirmative defense] that a plaintiff's claims are pre-empted under [a federal statute] does not establish that [those claims] are removable to federal court." Caterpillar, 482 U.S. at 398. Indeed, it is "settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the . . . complaint, and even if both parties concede that the federal defense is the only question truly at issue." Id. at 393 (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 12 (1983)).

On the other hand, complete preemption is jurisdictional and is "reserved for statutes 'designed to occupy the regulatory field with respect to a particular subject and to create a superseding cause of action[.]'" Roddy, 395 F.3d at 323 (quoting Warner, 46 F.3d at 535). As discussed above, if an area of law is "completely preempted," then any civil complaint raising state law claims in that area of law necessarily alleges claims that are federal in character, and the action is subject to *removal* notwithstanding the well-pleaded complaint rule. Id. (quoting Metro. Life, 481 U.S. at 63–64); Loftis, 342 F.3d at 515. The Sixth Circuit has "made clear," however, "that 'complete preemption' no matter how powerful when properly present in a case—is . . . a very limited exception to the well-pleaded complaint rule[,]" and is applied "only when the federal statutory language demonstrates that Congress has manifested a clear intent that claims not only be preempted under the federal law, but also that they be removable[.]" Palkow, 431 F.3d at 553. Indeed, this so called "'super preemption' or 'preemption on steroids,' id., is so extraordinary and rare, that "the Supreme Court has recognized complete preemption under only three statutes: § 301 of the Labor Management Relations Act, . . . the Employee Retirement Income Security Act of

10

1974, . . . and § 30 of the National Bank Act[.]"[9] Roddy, 395 F.3d at 323 (citing Anderson, 539 U.S. at 6–7)).

The key takeaway from these cases is that the complete preemption doctrine applies only if a federal statute "provide[s] the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." Anderson, 539 U.S. at 8 (citations omitted). Here, Defendants have not met their burden of demonstrating that the complete preemption doctrine applies because they have not even argued that the Medicare Act provides the exclusive cause of action for claims that fall within its scope. See Eastman, 438 F.3d at 549. Moreover, the Court is persuaded by other federal cases indicating that "the Medicare program does not completely preempt state tort law claims." Hofler v. Aetna U.S. Healthcare of Cal., Inc., 296 F.3d 764, 768 (9th Cir. 2002), abrogated on other grounds by Martin v. Franklin Capital Corp., 546 U.S. 132 (2005); see also Riverhills Healthcare v. Aetna U.S. Healthcare, No. C-1-00-525, 2000 WL 34557567, at *3 (S.D. Ohio 2000) (citing Downhour v. Somani, 85 F.3d 261, 265–66 (6th Cir. 1996)) ("Medicare does not completely preempt state law where billing for medical services is concerned.").

By concluding that the Medicare Act does not completely preempt Plaintiffs' claims in this case, the Court takes no position regarding whether Defendants could successfully raise an ordinary preemption defense. That is a matter left for the Chancery Court to decide. Instead, the Court only holds that the Medicare Act does not provide removal jurisdiction in this case and that

---

[9] The Sixth Circuit has expanded the complete preemption doctrine to even fewer statutes. See Dillon, 992 F. Supp. at 758 (collecting cases and noting that the Sixth Circuit has recognized complete preemption under the Copyright Act and the National Flood Insurance Act).

11

Plaintiffs remain the masters of their complaint and are free to litigate their claims (and Defendants' potential preemption defense) in state court. See Gentek, 491 F.3d at 325.

C. Supplemental Jurisdiction

Without providing any analysis or case law, Defendants also state in their Notice of Removal that "[t]his Court has supplemental jurisdiction over the additional claims pursuant to 28 U.S.C. § 1367." (Doc. No. 1 ¶ 6). To the extent Defendants are arguing that the Court can exercise supplemental jurisdiction over Plaintiffs' state-law claims simply because this case was removed (albeit improperly), that argument is foreclosed by binding Sixth Circuit case law. In Ahearn v. Charter Twp. of Bloomfield, the Sixth Circuit held that "[t]he supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction and a removal petition therefore may not base subject-matter jurisdiction on the supplemental-jurisdiction statute[.]" 100 F.3d 451, 456 (6th Cir. 1996). Accordingly, the Court cannot exercise supplemental jurisdiction over Plaintiffs' state-law claims that were removed in error.

## IV. ATTORNEY FEES AND COSTS

Plaintiffs seek an award of fees and costs under 28 U.S.C. § 1447(c), which allows a court granting a remand motion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." But "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005).

Plaintiffs argue that Defendants had no objectively reasonable basis for filing a notice of removal after Brown v. Knoxville HMA Holdings, LLC, 447 F. Supp. 3d 639 (M.D. Tenn. 2020), which involved the same defendants and law firms here. In Brown, Judge Eli J. Richardson dismissed plaintiffs' federal claims and declined to exercise supplemental jurisdiction over state-

12

law claims that were nearly identical to Plaintiffs' claims in this case. Id. at 653–54. Notably, however, the plaintiffs in Brown never filed a motion to remand because the Complaint asserted federal claims, and the defendants never argued that the Court had federal question jurisdiction over the state-law claims. Even more, none of the plaintiffs in Brown alleged that they were insured through Medicare. (See Doc. No. 23 at 9). For these reasons, the Court cannot conclude that Defendants lacked an objectively reasonable basis for filing their notice of removal in this case.

Accordingly, Plaintiffs' request for attorney fees and costs under § 1447(c) will be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Remand (Doc. No. 20) will be granted and their request for attorney fees will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE